Date signed January 04, 2010



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

In Re:                                      *
DANA L. WICK                                *   Case No.   08-11530DK
                                            *   Chapter    13
                                            *
       Debtor.                              *

**MEMORANDUM OPINION**

Debtor commenced this Chapter 13 case by the filing of a petition on February 4, 2008. The proposed Chapter 13 plan initially filed by Debtor and two successive amended proposed Chapter 13 plans were denied confirmation. On December 23, 2008, Debtor filed a proposed fourth amended Chapter 13 plan which came before the court on January 27, 2009, at a hearing to consider confirmation. The Chapter 13 Trustee opposed confirmation of the amended plan asserting that the plan was not proposed in good faith and the plan failed to provide that all of the Debtor's projected disposable income during the commitment period of the plan would be applied to the plan as required. The court continued the hearing to March 19, 2009 to permit the parties an opportunity to introduce evidence in support of their positions and provide memoranda of law. After the evidentiary hearing was conducted on March 19, 2009,[1] the court took the matter under advisement

---

[1] The hearing transcript is filed in the court record as docket no. 87.

to consider the two objections raised by the Chapter 13 Trustee.[2]  Relevant facts concerning the Debtor's circumstance, the filing of this case and the content of the plan are not disputed.  These facts were the subject of proffers without objection entered into evidence at the evidentiary hearing as reflected by the transcript.

In February of 2006, Debtor and her husband (hereinafter "Husband"), purchased their present residence (the "Residence") located in Elkton, Maryland.  At the time of the purchase the real estate market in Elkton, Maryland was very strong with houses selling for asking price or above.  At the time of that purchase, Debtor and Husband offered for sale their former home (the "Former Home") located north of Elkton, Maryland in the state of Delaware.  Unfortunately, two events occurred while the couple was transitioning from their Former Home to their Residence.  The real estate market in the localities of the residences took a dramatic downturn significantly adversely affecting the price for which homes could be sold and the ability to find a buyer.  At the same time, Husband's income declined dramatically to the point where at the time of filing of this case and at the time of the March hearing upon confirmation, Husband had zero income.

Debtor and Husband continued to make mortgage payments on both homes for approximately a year and a half while the asking price for the sale of the Former Home was continually lowered in an attempt to find a buyer.  When no purchase of that home occurred, Debtor filed the instant Chapter 13 bankruptcy case.

Subsequent to the filing of the bankruptcy case, Debtor filed a motion and obtained an order avoiding the second mortgage held by Wells Fargo Bank, NA upon the Residence.  Such order was

---

[2] On December 17, 2009, the court held a final hearing upon confirmation for the purpose of updating the facts provided at the March hearing and delivering an oral ruling. At that hearing, the parties represented that Debtor is current with all plan payments and to date has timely made all 22 payments which have come due. The parties further agreed that no other relevant facts have changed concerning the Debtor's financial circumstances beyond Debtor having now given birth to her second child.

2

founded upon a factual finding that the fair market value of the Residence was less than the balance due on the first mortgage having priority over the secured mortgage loan of Wells Fargo Bank.[3]

It appears Debtor has paid installments to the first mortgage holder as agreed and is current on that loan at the time of the hearing upon the fourth amended plan. The plan proposes that Debtor will continue to pay that secured debt under the terms of the original contract and outside the Chapter 13 plan.

As to the Former Home, the plan provides the property will be "surrendered" to the mortgage holder. A Cadillac motor vehicle will also be surrendered to a lienholder under the plan. The regular monthly mortgage payment upon the first priority mortgage on the Residence is $4,857.00. The total net income of Debtor and Husband is $8,756.00.[4] An amended Schedule I and J filed on March 3, 2009, discloses that after deductions from Take Home Income of the amount of the mortgage payment and other household expenses, the Debtor's available monthly income is $842.60.[5] The fourth amended plan proposes to pay increasing payments through the first ten months pursuant to Section 1326(a)(3) and thereafter fifty monthly payments at the rate of $840.00. The total amount to be paid under the plan to the Chapter 13 Trustee is approximately $45,800.00.

Pursuant to the proposed plan, from amounts paid into the plan by Debtor, the Chapter 13 Trustee shall distribute the amount of $6,865.00 for payment of a secured claim held by eCAST Settlement Corporation as determined by an Order of this court entered October 2, 2008 (pleading no. 53), administrative expenses, with the remainder distributed pro-rata to unsecured creditors

---

[3] *See Johnson vs. Asset Management Group, LLC*, 226 B.R. 364 (D.Md. 1998).

[4] This amount is the net income after taxes and other payroll deductions (the "Take Home Income").

[5] There is a slight discrepancy between the Schedule I available income and that which was the subject of an accepted proffer at the evidentiary hearing. The court finds that the discrepancy is insignificant and not material to the ruling on this matter.

3

including the claim of creditor Wells Fargo Bank which was previously secured by the second lien upon the Residence. The distribution to unsecured creditors under this plan would approximate 15% of the allowed amount of their claims.

The Residence was occupied at the time of the March hearing upon confirmation by Debtor, Husband and their one child. Debtor has now had a second child who resides in the Residence.

At the time of the hearing upon confirmation, Husband was earning no income but was actively seeking employment without success.[6] Because the Residence has a market value below the outstanding amount of the first mortgage debt and Debtor owns no other interest in assets which, after applicable exemptions, would yield funds available for distribution should the case be a case under Chapter 7, the Chapter 13 Trustee raises no objection to confirmation pursuant to Section 1325(a)(4).[7] Instead, the Chapter 13 Trustee's objections center on the amount of the mortgage payment on the Residence. This amount, $4,856.88, is approximately 4.7 times greater than the IRS standard allowance for mortgage related housing expense referred to in 11 U.S.C. § 707(b)(2)(A)(ii) in determining "disposable income" on Form B22C. The mortgage payment makes up approximately 59.4 % of the average monthly income of Debtor. According to the argument of the Chapter 13 Trustee, Debtor has the opportunity to move into an apartment complex in the same general area occupying a three bedroom, two bathroom apartment for an expense that would be

---

[6] This fact (and all other related facts) remained unchanged at the time of the December 17, 2009 hearing.

[7] This section provides: "Except that as provided in subsection (b), the court shall confirm a plan if– [in addition to the provisions set forth in (a)(1)-(3) and (5)-(9),] (4) the value, as of the effective of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4).

4

"under $1,300.00 instead of nearly $4,900.00".[8] If Debtor surrendered the Residence and rented a residence as the Chapter 13 Trustee suggests, it appears uncontroverted that Debtor would have sufficient disposable income to pay all claims of all creditors in full through a plan.

On the other hand, the Chapter 13 Trustee concedes that if Debtor were to convert the case to a case under Chapter 7, the Residence would not be sold by a Chapter 7 Trustee because the mortgage debt is significantly higher than the fair market value. It is possible Debtor could reaffirm the mortgage contract because Debtor remains current upon payments under that contract and therefore in a Chapter 7 case could retain occupancy and ownership of the Residence.[9] Because Debtor does not have any non-exempt assets from which a Chapter 7 Trustee could obtain funds for distribution, the creditors would receive zero in a Chapter 7 case instead of the 15% they will receive under the Debtor's current proposed plan.

From these facts, the Chapter 13 Trustee argues two grounds for denying confirmation. First the Chapter 13 Trustee asserts that the fourth amended plan is not proposed in good faith. The main factual support for this argument is the large mortgage payment drain on disposable income in order to maintain what the Chapter 13 Trustee asserts is an overly pricey residence, that is worth less than the mortgage indebtedness encumbering that residence.

In addition, the Chapter 13 Trustee asserts that there is some indication of less than honesty as to the Schedules filed in this case. The original Schedule I filed in the case did not disclose yearly bonuses which Debtor has received in addition to her regular salaried income. However, Schedule C did list such bonuses as an exemption. The amended Schedule I and J referred to

---

[8] Tr. of Hearing held 3/19/09, at p.41, lines 20-21.

[9] However Debtor presumably would be required to also pay current payments upon the 2nd mortgage loan because Debtor could not "strip off" the second lien in a Chapter 7 case. *In re Cunningham*, 246 B.R. 241, 247 (Bankr. D. Md. 2000), *aff'd Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001).

5

hereinabove do include an average of the yearly bonuses received in the last three years amortized over twelve months as a part of the disclosed monthly income.  The Chapter 13 Trustee also points out that the Chapter 13 Trustee had to make repeated requests for documents disclosing the non-filed Husband's employment status before those documents were produced.  However, the Chapter 13 Trustee does not dispute that the husband is unemployed.

As the Chapter 13 Trustee states in his argument, the "key factor is that the debtor is seeking to retain a house that is considerably under water"[10] and housing is reasonably available to Debtor in the same vicinity with three bedrooms sufficient to accommodate a family of four for considerably less than the mortgage payment being deducted as an expense from the Debtor's available income in determining projected disposable income.[11]  The Trustee concludes: "It just is not reasonably necessary for the debtor to have that expense and the fact that the debtor continues to try to hold onto that house to the detriment of the unsecured creditors shows that the plan has not been proposed in good faith."[12]

In addition, the Chapter 13 Trustee argues that under these facts the full amount of the monthly mortgage payment is not a reasonable expense and should not be permitted as an expense in calculating projected disposable income.  The Chapter 13 Trustee's second basis for objecting to confirmation therefore, is that the plan does not provide all of the Debtor's projected disposable income to be received in the applicable commitment period.

Addressing the Chapter 13 Trustee's argument that the plan does not provide all of the Debtor's projected disposable income, the court must apply the statute as Congress amended it by

---

[10]  Tr. of Hearing held 3/19/09, at p.42, lines 22-24.

[11]  Tr. of Hearing held 3/19/09, at p.43, lines 17-23.

[12]  Tr. of Hearing held 3/19/09, at p.43, lines 24-25; p.44, lines 1-2.

6

the Bankruptcy Abuse Prevention And Consumer Protection Act Of 2005 ("BAPCPA"). Section 1325(b)(2)[13] now provides that "disposable income" means current monthly income received by the debtor with certain adjustments not applicable to this case, less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and for certain charitable contributions and payment of expenses necessary for the continuation and preservation and operation of a debtor's business. The amounts "reasonably necessary to be expended" are mandated to be determined in accordance with Subparagraphs (A) and (B) of Section 707(b)(2) if the debtor has current monthly income on an annualized basis that is greater than the median family income for the applicable state or household of the size of the debtor.[14]

The Debtor's current monthly income is greater than the median family income and therefore this statutory calculation of reasonably necessary expenses must be followed. Section

---

[13] Section 1325(b) provides in part:
(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
   (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
   (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
11 U.S.C. § 1325(b)(1) and (2).

[14] 11 U.S.C. § 1325(b)(3).

707(b)(2)(A)(ii)(iii), and (iv) dictate what monthly expenses are deducted from Current Monthly Income ("CMI") in order to determine "disposable income."[15]  One of the expenses addressed by Section 707(b)(A) is the actual average monthly payments on account of secured debts.  Section 707(b)(A)(iii) provides that the average actual monthly payments on account of secured debts shall be included as an expense for purposes of calculating "disposable income" pursuant to Section 707(b) and therefore under Section 1325(b)(2) as well.

Thus, under this provision, the actual mortgage payment of Debtor is to be included in this calculation of "disposable income" seemingly without regard to whether the level of monthly payment on account of such secured debt is, or is not, reasonable under the circumstances of the Debtor's family.  Such a reading is a significant departure from the pre-BAPCPA law under which reasonably disposable income included an inquiry and decision by the court as to whether actual expenses incurred were reasonable in the context of the Chapter 13 case.  *See In re Stanley*, 296 B.R. 402, 408 (Bankr. E.D.Va. 2002) ("No strict test exists for determining whether expenditures are reasonably necessary, and the standard is to be determined on a case by case basis.").

Whether there remains a test of such reasonableness under the current Bankruptcy Code for expenses enumerated in Section 707(b)(A) and if so, to what degree, is a matter of some dispute in opinions applying these provisions.[16]  No defining decision by the United States Court of Appeals for the Fourth Circuit on this question has been located by this court.  Some courts have taken a formulaic approach[17] under which the calculation of "disposable income" contained in Form B22C

---

[15] CMI is defined as an average of debtor's monthly income for the six month period immediately proceeding and commencement of the bankruptcy case.  11 U.S.C. 101(10)(A).

[16] *See In re Watson*, 366 B.R. 523, 529-30 (Bankr. D. Md. 2007) (discussing split in decisions).

[17] This formulaic approach is increasingly being referred to in caselaw as the "mechanical approach."

8

leaves little or no discretion to a court in determining projected disposable income as those words are used under Section 1325(b)(1)(B). *See In re Farrar-Johnson,* 353 B.R. 224 (Bankr. N.D.Ill. 2006) and *In re Alexander*, 344 B.R. 742 (Bankr E.D.N.C. 2006). Other courts have adopted what has been labeled the "forward looking approach."[18]

In *In re Turner*, 574 F.3d 349 (7th Cir. 2009), the United States Court of Appeals for the Seventh Circuit held that when presented with actual evidence of a change in circumstances that is likely to occur, the court should not be bound by the so-called mechanical approach. *Id.* at 355. Although the Court cautioned that such ruling was limited to actual evidence of a change in circumstances and that bankruptcy courts should avoid the potential to "unsettle and delay" the confirmation process by engaging in speculation as to the debtor's income and expenses over a future five year period. *Id.* at 56. In *Turner*, the debtor's fixed mortgage payment was to be eliminated during the period after the bankruptcy filing (and date of statutory calculation of disposable income) and the confirmation date. The Court found that it was more "sensible" to consider disposable income for purposes of determining plan payments without the mortgage payment included, as it would disappear even before confirmation. *Id.* at 355-56. In so ruling, the Court quoted from the opinion of the United States Court of Appeals for the Eighth Circuit:

> We therefore agree with the Eighth Circuit . . . that while the calculation of "disposable income" in the plan submitted by the debtor "is a starting point for determining the debtor's 'projected disposable income,' . . . the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances."

*Id*. at 356 (quoting *In re Frederickson*, 545 F.3d 652, 659-60 (8th Cir. 2009)).

This court has similarly held in its decision in *In re Watson*, 366 B.R. 529 (Bankr. D. Md.

---

[18] Though that nomenclature was rejected recently by the United States Court of Appeals for the Seventh Circuit which stated: "Although some judges, like the trustee in our case, call this the 'forward-looking' approach, bankruptcy judges must not engage in speculation about the future income of expense of the Chapter 13 debtor." *Id.* at 356.

9

2007):

> "[D]isposable income" as calculated on Form B22C is the presumptive "projected disposable income" for application of Section 1325(B)(1)(B). However, by evidence a party may demonstrate "a substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future.

*Id*. at 531.

However, in the Debtor's case now before the court, there is no evidence of a change in circumstances that would show that "disposable income" as defined under Section 707(b)(A) is not now a fair projection of the Debtor's budget in the future for purposes of determining "projected disposable income." The significant change in the language of Section 1325(b) made by BAPCPA that requires "disposable income" in this case to be determined using expenses in accordance with Section 707(b)(2)(A) and (B) cannot be ignored.[19] Although "projected disposable income" may vary from "disposable income" where evidences demonstrates that significant changes will occur during the commitment period of the plan, absent evidence of such change, the court holds that it may not redefine "disposable income" or adjust "projected disposable income", simply because the amount of actual secured installment payments appears disproportionate to the reasonable needs of the debtor. For this reason, the court finds that the plan provided by Debtor satisfies the requirements set forth in Section 1325(b)(1)(B) in that it provides all of the Debtor's "projected disposable income" as required.

The court next turns to the Chapter 13 Trustee's argument that the plan is not proposed in good faith. The factors to be considered by the court in determining whether a debtor's Chapter 13 plan is proposed in good faith have been set forth in two seminal cases by the United States Court of Appeals for the Fourth Circuit. In *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982), the Court

---

[19] *In re Washburn*, 579 F. 3d 934 (8th Cir. 2009).

points out that the Bankruptcy Code does provide a definition of the term "good faith." *Id.* at 969. In concluding that the plain language of the statute precluded a per se rule requiring substantial repayment to creditors as a requirement of good faith, the Court noted that no precise definition of the term "good faith" would fit for every Chapter 13 case. *Id.* at 972. However, the court went on to state that the former Bankruptcy Act, 11 U.S.C. § 766(f)(1976)(repealed) provided a general definition of "good faith" which remained a useful parameter. "'Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan....'" *Id.* (citing 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978).

In the *Deans* decision, the Court concluded by stating a number of factors that might be included in examining the question of good faith in a particular case. *Id.* The ultimate decision should be based upon the totality of circumstances on a case-by-case basis but the list of factors includes: the percentage of proposed repayment under the plan, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problem facing the particular debtor. *Id.*

Subsequently, in the case of *Neufeld v. Freeman*, 794 F. 2d 149 (4th Cir. 1986) the Court revisited the topic of the requirement that a Chapter 13 plan be proposed in good faith. In the *Neufeld* case, it was argued that the debtor's pre-petition conduct should also be considered as a fact in judging whether the plan was proposed in good faith. It was argued in the *Neufeld* case that the creditor's claim would have been non-dischargeable in a Chapter 7[20] and that this was a fact demonstrating the lack of good faith of the debtor's Chapter 13 plan which, if confirmed and

---

[20] The creditor's claim arguably would have been non-dischargeable pursuant to 11 U.S.C. § 523(a) as arising from wrongful conversion of goods.

11

performed, would discharge such debt.  Both the Bankruptcy Court and District Court refused to consider the debtor's pre-filing conduct as a factor.  However the Circuit Court determined that although standing alone, the fact that the proposed Chapter 13 plan would discharge a debt which would not have been dischargeable in a Chapter 7 case would not constitute a sufficient basis to find the plan proposed in bad faith, that fact is a relevant factor to be considered.  *Id.* at 153.

The holding of the Circuit in *Neufeld* requires that the Bankruptcy Court include an examination of a debtor's pre-petition conduct as a factor in determining whether the Chapter 13 plan is proposed in good faith.  This factor is then weighed along with those factors set forth in the non-exclusive list from the earlier *Deans* decision.

Turning to the facts of the instant case, this court finds that the facts do not support the position argued for by the Chapter 13 Trustee.  Applying the factors set forth in the *Deans* and *Neufeld* decisions, there can be no finding that Debtor lacks the requisite good faith.  The percentage of proposed repayment is not minimal.[21]  It appears without question to be the maximum that Debtor can afford to pay given the Debtor's expenses including the large mortgage expense.  The duration of the plan is for the maximum permitted by the statute.  There appears to be no factual dispute concerning the Debtor's employment or the earnest effort by Husband to seek employment, currently without success.  The nature and amount of unsecured claims are unremarked upon and do not appear to disclose any pattern of exorbitant living or other misconduct.  There has been no past bankruptcy case filed by Debtor according to the records of this court.

Although the Chapter 13 Trustee makes a passing comment on the Debtor's honesty in representing facts, a full examination of the record to which the Chapter 13 Trustee alluded, does

---

[21] The proposed 15% distribution to unsecured creditors contained in the Debtor's plan is significantly different, for example, from the facts in the case of *In re Namie*, 395 B.R. 594 (Bankr. D.S.C. 2008), cited by the Chapter 13 Trustee in support of his objection.

12

not demonstrate any intentional dishonesty. It appears the Chapter 13 Trustee was understandably somewhat frustrated by the delays incurred in receiving information but that the information when received in fact supported what Debtor had previously stated with only minimal corrections.

The real focus is on the Debtor's pre-petition conduct in entering into the mortgage debt which put such a heavy burden upon the disposable income. This pre-petition conduct must be considered by the court as a part of the totality of circumstances in judging whether the plan was proposed in good faith. For example, if a hypothetical debtor before filing a bankruptcy case, entered into an installment secured obligation to purchase property (real or personalty) without the financial ability to pay the installments and pay other indebtedness, such conduct might support a finding of bad faith as to a subsequent Chapter 13 plan that permitted the debtor to retain the purchased property but discharge other debts without significant payments. Whether or not the purchased property was an unnecessary luxury might also be a relevant fact in applying this factor of conduct.

In the instant case Debtor did not intentionally create the financial situation now presented. At a time when the real estate market was extremely strong Debtor decided to relocate her family's residence and apparently "trade up" by some amount the size and value of the residence. It is noted that this decision apparently was made in the context of increasing the family size. Through no apparent fault of Debtor, the Debtor's timing in making this move could not have been less fortunate. After incurring the new mortgage to buy the Residence at the top of the market, the market literally crashed before Debtor could sell the Former Home. This saddled Debtor with two mortgages which Debtor ultimately could not sustain. At the same time and arising from the same events, a significant part of the Debtor's family's gross monthly income was lost. Husband's source of income was in the mortgage business and when the market crashed his income went to zero. It is not disputed that this also occurred through no fault of Debtor. The confluence of these

events left Debtor impoverished due to crippling mortgage debt and unable to pay debts as they became due.

As discussed above, Congress has mandated that the actual installment secured debt payments be included as expenses in the mathematical calculation of disposable income of a debtor whose currently monthly income exceeds the median family income. It therefore appears unsupportable that where no other facts support a lack of good faith, the seeming disproportionate result of the calculation of disposable income by itself would provide a basis to find that the Chapter 13 plan is not proposed in good faith.

It is true that some courts have held that a debtor lacks good faith in proposing a plan which would allow the debtor to retain an expensive parcel of secured property while making a minimum distribution to unsecured creditors. *See, e.g.,* In *re Namie*, 395 B.R. 594, 597 Bankr. D.S.C. (2008). This conclusion appears based largely upon a precept that debtors must bear the burden of paying for improvident expenses and should not retain "the spoils of imprudent purchases." *Id*. The caselaw cited by recent decisions to support this proposition pre-dates the 2005 Amendments to the Bankruptcy Code which created the present formulaic construction of disposable income. It is true that some courts nonetheless have imposed a further test of "reasonably necessary" upon expenses of an above median income debtor even though those expenses are expressly allowed as part of the determination of disposable income under Section 1325(b) referring to Section 707(b)(2)(A) and (B). However in the absence of facts demonstrating that projected disposable income will be actually significantly different than the formula derived disposable income,[22] it appears Congress intends that the formula meets the requirement of Section 1325(b)(1)(B). A plan that proposes to pay at least the projected disposable income of debtor, in the absence of other facts, cannot be found

---

[22] *See In re Turner,* 574 F.3d 349 (7th Cir. 2009).

14

to be in bad faith, simply because it does not pay more.[23]

It is noted that Debtor argues that because the plan will deliver a 15% distribution to unsecured creditors where a Chapter 7 liquidation would provide 0%, the plan must be found to be proposed in good faith. There is an independent requirement that if the Chapter 13 Trustee or a creditor objects to confirmation, the plan must deliver at least the equivalent value by distribution to unsecured creditors as would a distribution that would have been provided by a Chapter 7 liquidation.[24] If meeting this "equivalency test" imposed by Section 1325(b)(1)(A) per se also satisfies the requirement that the plan be proposed in good faith, the requirement of a plan being proposed in good faith as separately set forth in Section 1325(a)(3) would be superfluous language in the Code. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 976, 140 L.Ed.2d 90 (1998) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."). However, the fact that the plan in the instant case will deliver to creditors significantly more than a hypothetical Chapter 7 liquidation, is a factor to be considered in the overall determination of the Debtor's good faith in proposing such plan.

An Order Confirming Plan in accordance with this Memorandum Opinion has been entered.

---

[23] In *In re Turner,* where the Debtor had filed a plan and argued (albeit unsuccessfully in that case) for the "mechanical approach" to the disposable income analysis, the Chapter 13 Trustee had argued that the court should make a finding of bad faith pursuant to Section 1325(a)(3). The court rejected the Chapter 13 Trustee's argument stating, "A plan does not violate this provision merely because it contains, fully disclosed, an arguable claim rejected in the court of the bankruptcy proceeding. It is not bad faith to seek to advance one's economic interests by making a claim based on a defensible view of one's legal rights, even if the view ends up being rejected- in this case by an appellate court after the first-line decision maker ruled in favor of the claimant." *Id*. at 356.

In the instant case, the court has found Debtor's position meritorious and will not find a lack of good faith by Debtor in advancing the argument that her monthly mortgage payment is to be included in the calculation of projected disposable income.

[24] 11 U.S.C. § 1325(b)(1)(A).

cc:   All Parties
      All Counsel

**End Of Decision**